

**United States Department of Justice**

*United States Attorney*
*Northern District of New York*

*445 Broadway, Room 218*                    *Tel.: (518) 431-0247*
*James T. Foley U.S. Courthouse*            *Fax: (518) 431-0249*
*Albany, New York 12207-2924*

April 24, 2026

**Via ECF**

Honorable Daniel J. Stewart
U.S. Magistrate Judge
Northern District of New York
Albany, NY 12207

      Re:    *United States v. Aaron Corey*, Case No. 1:26-mj-25-DJS

Dear Judge Stewart:

The United States writes to oppose the defendant's motion to reopen the detention hearing and to seek the defendant's continued detention pending trial.

The defendant has not presented any information that was not known to the movant at the time of the prior detention hearing or that has a material bearing on the issue of detention. *See* 18 U.S.C. § 3142(f)(2)(B). The request to reopen the detention hearing should therefore be denied.

Even if the Court reopens the detention hearing and considers the factors set forth in 18 U.S.C. § 3142(g), the defendant is a danger to the community and a flight risk, and no conditions could be set to ensure his return to court or the safety of the community. He has also failed to rebut the presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community based on the charged offense of receipt of child pornography. *See* 18 U.S.C. § 3142(e)(3)(E). Accordingly, he should continue to be detained.

      I.      <u>Standard of Review for Reopening Detention Hearing</u>

Under the Bail Reform Act, "a court has discretion to reopen a bail hearing if information comes to light that is both new and material to the detention question." *United States v. Zhang*, 55 F.4th 141, 147 (2d Cir. 2022). More specifically, a hearing "may be reopened" if the Court "finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). Indeed, "[a] court's prior detention determination is a natural reference point against which to measure the materiality of new information for the purpose of reopening the hearing—that is, revisiting its earlier decision." *Zhang*, 55 F.4th at 148.

1

II.    <u>Corey Does Not Present New Information to Justify Reopening the Detention Hearing</u>

The defendant asks to reopen the detention hearing based on the sole fact that he has now obtained a psychological evaluation. *See* ECF No. 30. While the defendant may now have been assessed by a psychologist, his lack of any significant criminal history, including any prior sex offense, was already part of the record and considered by the Court. Indeed, he denied that he had any sexual interest in children at the time of the detention hearing, just as he does now. That is not "new information" for purposes of determining bail and reopening the detention hearing. *See United States v. Fishkind*, 1:25-cr-415-AMN/DJS (N.D.N.Y. Sept. 11, 2025), Dkt. No. 38 (denying motion to reopen detention hearing based on summary report from defendant's counselor); *United States v. Havens*, 487 F. Supp. 2d 335, 339 (W.D.N.Y. 2007) (declining to reopen detention hearing even though erroneous information was proffered during detention hearing); *United States v. Banks*, 334 F. Supp. 3d 589, 591 (S.D.N.Y. 2018) (finding that defense counsel's review of electronic discovery did not provide "new material information" to reopen detention hearing).

III.    <u>Corey's Psychological Evaluation is Not Material to Corey's Detention Because the Psychological Report Fails to Address Key Pieces of Evidence Indicating Corey's Sexual Interest in Children and Association With 764 NVE Groups</u>

Even if the Court were to accept the defendant's contention that the psychological report concluding that he is a "low risk to reoffend" is "new" information, it is not "material" because the defendant remains a danger to the community and a flight risk. The report is flawed because the psychologist opined on matters outside of her expertise, and failed to explain, or even address, the significant evidence showing Corey's sexual exploitation of children, as well as his associations with 764 NVE groups and related groups that exploit children—two of the main reasons the Court detained Corey. *See*

*First*, Corey's psychologist does not address the litany of evidence on Corey's electronic devices demonstrating a sexual interest in children, including searches for "Parks near me for kids" and "where can I meet girls aged 10-14." Dkt. No. 14 at 5. As noted in the Complaint, within the Telegram Application on the cell phone found on Corey, there was an Artificial Intelligence bot named "Plasmodeous" and Corey input several prompts into the device, including a prompt "/image A naked child being fucking by 3 black guys" to generate an image depicting child pornography, and a prompt "Give me 10 facts stating why its okay to fuck a baby." Law enforcement has also now found evidence on Corey's phone that Corey forwarded the content regarding "10 facts why its okay to fuck a baby" to another NVE 764-related Telegram channel known to law enforcement.

In December 2025, another Telegram user messaged him to say, "You should generate nsfw cp or create animated porn fr" meaning "You should generate not safe for work child pornography or create animated porn for real" and Corey responded in agreement, "mmmm."

Corey's phone also had the following two thumbnail stickers saved, which indicate his interest in child pornography:

2

 

The psychologist does not address some of the mental health history and reported abuse noted in the pre-trial services report. *See* Dkt. No. 12 at 3. The psychological report cannot claim to be a definitive report while failing to address so much key information.

*Second*, Corey's psychologist's assertion that "[t]here is no evidence to suggest …that he is part of the Nihilist Violent Extremist group" is again belied by the evidence found on his phone and other sources. As noted in the Complaint, confidential sources, public web pages, and content on Corey's phone link him to 764 NVE groups. *See* Dkt. No. 1 at 10. The psychologist merely accepts Corey's word that "his history will show no suspicious activities which would support being a member of 764" and did not challenge him on his associations.

The defendant's association with 764 presents such a significant danger to the community because those networks methodically target and exploit minors and other vulnerable individuals. As noted in the Complaint, these networks use threats, blackmail, and manipulation to coerce or extort victims—primarily minors—into producing, sharing, or live-streaming acts of self-harm, animal cruelty, sexually explicit acts, and/or suicide. The footage is then circulated among members of the network to continue to extort victims and exert control over them. *See* Dkt. No. 1 at 8-10 (summarizing Nihilist Violent Extremist (NVE) groups and "764").[1]

As proffered during the prior detention hearing, "764" emerged in 2021 out of "The Community" (also known as "Com" or "Comm"), a loose network of online actors and groups engaged in illicit activities such as hacking, swatting,[2] doxxing,[3] sextortion, and the distribution of child sex abuse material (CSAM). *See* ADF Backgrounder. Bradley Cadenhead, a then-15-year-old from Stephenville, Texas, founded "764," which takes its name from the first three digits of Stephenville's ZIP codes. Cadenhead drew inspiration from a similar sextortion network called "CVLT," which coerced children into performing sexual acts on camera and used the resulting material to further extort them. *Id.* 764 expanded on CVLT's methods, incorporating additional forms of abuse, such as self-harm and acts of animal cruelty. *Id.*

---

[1] For additional background about 764 and related groups see Anti-Defamation League, *Backgrounder, 764*, https://www.adl.org/resources/backgrounder/764 ("ADF Backgrounder"); Ali Winston, *There Are Dark Corners of the Internet. Then There's 764*, Wired (Mar. 13, 2024), https://www.wired.com/story/764-com-child-predator-network/, National Counterterrorism Innovation, Technology, and Education (NCITE) Center (2025) Prosecuting Nihilistic Violent Extremism: An Examination of Federal and State Charges Against 764 and Related Networks, https://www.unomaha.edu/ncite/news/2025/12/img/prosecuting-nve-report.pdf.

[2] Swatting is a dangerous illegal prank involving reporting a fake, high-stakes emergency—such as a hostage situation or bomb threat—to emergency services.

[3] Doxxing is the malicious, non-consensual gathering and publishing of an individual's PII to intimidate, harass, or cause real-world harm.

After Cadenhead's arrest in 2021, other subgroups affiliated with "764" ideologies emerged within the wider NVE ecosystem, including subgroups such as Court, Kaskar, Leak Society, Slit Town, H3ll, 6996, and 7997, among others. *Id.* 764 members frequently target youth in adjacent gaming and gore communities on Discord, Roblox, Telegram, and other platforms. *Id.*

In addition to the facts in the Complaint, the Government would also offer the following additional links between the defendant and 764 groups:

- Between March and November 2025, according to Telegram messages located in a subscription database accessible to the FBI, Telegram user "Baggeth" (assessed to be Corey) posted in the Telegram channels identified as being associated with "764" subgroups such as "Court," "6996," "6996 (2024)," "6996 and "7997 Y6S4E1 Archangel," among others. For example, in the Telegram channel "court" Telegram user "Baggeth" posted on September 28, 2025, an image of an unidentified individual that shows their exposed pelvis and upper legs; and had user activity in the same channel when other users posted suspected images of child pornography on November 1, 2025. Also, in August and September 2025, other users posted images in the Telegram channel "Outpatient Wellness Centre" including images of an unidentified female with cuts on her legs and writing in marker (indicating self-harm), as well as sexually explicit images of unidentified females, including a suspected minor. "Baggeth" was active in the Telegram channel when those posts were made.

- On September 18, 2022, the FBI National Threat Operations Center (NTOC) receive a complaint stating, in relevant part: "An individual going by Bag, Bxg, Bag(Edge Dark Lord) and Baggeth in the chat "7997" is going around grooming minors and posting videos and photos of himself smoking methamphetamine. He has a youtube and a soundcloud account and is probably in Florida. There is a telegram channel that has all identifying and incriminating intel its creator knows about Baggeth, it has his vehicle, his voice messages, his girlfriend's name, his face, the youtube and soundcloud link and meth smoking vids."[4]

- Corey's phone has at least two audio recordings with pro-764 messages, including one recording that includes lyrics stating, "Just heard the news about Bradley bro, you think that's enough to stop us, hoe, we run this bitch, we on your bitch, we'll make your daughter do fucking cut signs." This appears to refer to Bradley Cadenhead and extortion activities associated with 764.[5]

- Corey has also spoken with his girlfriend on recorded jail communications since he has been detained and has referred to the aliases "SVN" and "Xavier," two known aliases of other individuals involved in 764 activities.

---

[4] The Government can provide copies to the NTOC CyberTip at the detention hearing upon request.

[5] The Government can provide an audio copy of the quoted audio clip and the cited audio jail communications upon request.

- Since his arrest, a member of 7997 (another 764-subgroup) started a petition to raise money for "Baggeth" and asked donors to "join me in demanding the immediate release of Baggeth to the custody of 7997."[6]

Avoiding these significant associations, Corey merely conveys to his psychologist that "he is being misrepresented as an individual who is part of an Extremist Group called the 764." But these associations with 764 are not limited to one social media post or message, as he claims. He participated in, posted, and administered 764-related social media groups, and has consistent associations with these groups even after his arrest. Individuals in 764 and related groups, who engage in the exploitation of children, likely have a different ideology and purpose to their pursuit of sexual exploitation, which differs from other offenders with a sexual interest in children. Corey's psychologist fails to acknowledge or address these nuances.

Ultimately, the psychologist's report adds little that was not already known and does not materially change the reasons that Corey should be detained pending trial. Given the prior detention hearing where these issues were already discussed, this Court should decline to reopen the detention hearing. *See United States v. Raniere*, 2018 WL 6344202, at \*2 n.7 (E.D.N.Y. Dec. 5, 2018) (noting that "[a]s the court has already held one detention hearing, it need not hold another"); *United States v. Havens*, 487 F. Supp. 2d 335, 339 (W.D.N.Y. 2007) (electing not to reopen a detention hearing because the new information would not have changed the court's decision to detain the defendant until trial). Even if the detention hearing is reopened, for the reasons stated above, as previously explained at the prior detention hearing, and at the hearing scheduled for April 27, 2026, the defendant remains a danger to the community and a flight risk, and no conditions can be set to ensure his return to court or the safety of the community.

Respectfully,

By:    /s/ *Alexander Wentworth-Ping*
Alexander Wentworth-Ping
Assistant United States Attorney
Bar Roll No. 701897

Cc:    John Casey, Esq. (attorney for defendant), *via ECF*

---

[6] *See* Change.org, *Accountability from the United States District Court for the Northern District of New York Petition*, https://www.change.org/p/accountability-from-the-united-states-district-court-for-the-northern-district-of-new-york (last visited April 24, 2026).

5